**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CHRISTY MARTINEZ, RAUL MARTINEZ,
*and* NICOLAS MARTINEZ, *all on behalf of*
Raul Tony Martinez, *deceased,*

       Plaintiffs,

v.                                                                           No. 1:21-cv-00118-JHR

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

       Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

       Before the Court is Plaintiffs Christy, Raul, and Nicolas Martinez's Motion to Reverse

and Remand with Supporting Memorandum [Doc. 22].[1]  Pursuant to 28 U.S.C. § 636(c) and

Federal Rule of Civil Procedure 73(b), the parties consented to Magistrate Jerry H. Ritter

resolving Plaintiffs' challenge to the Commissioner's final decision on Raul Tony Martinez's

application for Social Security benefits and entering final judgment in this appeal.  [Docs. 3, 5].[2]

Having reviewed the parties' briefing and the Administrative Record ("*AR*"), the Court denies

Plaintiffs' motion and affirms the Commissioner's final decision denying benefits under the

Social Security Act.

**I.**     <u>**INTRODUCTION**</u>

       In their appeal from the Social Security Administration's final decision denying benefits

to Raul Tony Martinez, Plaintiffs argue four issues.  First, they assert that the Administrative

Law Judge ("ALJ") below did not properly consider Martinez's statements about his abilities and

---

[1] This case was originally filed by Raul Tony Martinez, who died on October 22, 2020.  [*See* Doc. 28].  His children
have substituted as Plaintiffs.  [Doc. 30].
[2] Documents 2, 3, 5, and 6 are text-only docket entries which can be viewed on CM/ECF.

his medical conditions.  Second, they argue that the ALJ did not give enough consideration to the opinion of a physician's assistant who examined Martinez and opined that he could not work. Third, they claim that the ALJ's findings on what Martinez was able to do (his residual functional capacity findings) were not supported by enough evidence.  And fourth, Plaintiffs argue that the ALJ allowed an expert witness on job requirements, called a vocational expert, to assess Martinez's ability to perform work even though the law requires the ALJ to make that assessment.  The Commissioner defends the ALJ on all issues and argues that Plaintiffs are misconstruing the rules.

The Commissioner is correct.  As explained below, the ALJ properly considered and discussed the evidence before him, supported his findings with enough evidence to survive judicial review, and did not hand off his duties to the vocational expert.  Plaintiffs cite rules and case law which are generally correct but misconstrue their boundaries.  The Court thus affirms the Administration's final decision.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Martinez applied for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI on August 16, 2018, claiming disability beginning December 1, 2016.  *AR* at 188, 190.[3]  Martinez alleged he could not work because of symptoms caused by congestive heart failure, degenerative changes to his left hip, water in his lung, and type II diabetes.[4]  *AR* at 12, 56.  The Administration denied Martinez's applications initially on March 28, 2019, *AR* at 53–54, and on reconsideration on

---

[3] Document 17 comprises the sealed Certified Transcript of the Administrative Record.  The Court cites the Record's internal pagination rather than the CM/ECF document number and page.

[4] Martinez also alleged depression and some memory loss.  *AR* at 13, 283.  ALJ Allen found they were not medically determinable impairments and thus did not consider them.  *AR* at 12–13.  Martinez also did not mention the alleged impairments in briefing.  [*See* Doc. 22].  The Court thus does not address them either.

October 4, 2019.  *AR* at 73–74.  Martinez was then granted a hearing before ALJ Matthew Allen, *AR* at 155–59, which took place on August 7, 2020.  *AR* at 26.

Martinez made numerous statements to the Administration and his medical care providers about his activities and how his medical conditions affected him.  Some of his statements suggested Martinez may not be able to work or would have difficultly doing so.  For instance, Martinez complained that fatigue prevented him from standing for long, *AR* at 208, that he had a hard time breathing and needed to rest after ten minutes of movement or work, *AR* at 237, and that he needed to use oxygen whenever he did physical activities.  *AR* at 280.  Other statements, however, suggested that Martinez's symptoms may not have been as severe as he claimed:  he went for walks daily, *AR* at 206, watered trees for twenty minutes to two hours, *AR* at 208, and claimed he could lift forty-five to fifty pounds.  *AR* at 40.

Medical opinions on Martinez's condition were similarly mixed.  Dr. Myron Watkins, M.D., reviewed Martinez's medical records during the state agency's initial consideration process on March 5, 2019.  *See AR* at 60–62.  Without examining Martinez, Dr. Watkins opined that Martinez possessed exertional capacities consistent with the requirements of light work.  *AR* at 61–62; *compare* 20 C.F.R § 404.1567(b) (defining "light work").[5]  Consultative examiner Lynn Wanderer-Potter, PA-C, disagreed.  On August 22, 2019, Wanderer-Potter performed a consultative examination and opined that Martinez could not meet requirements for even sedentary work.  *See AR* at 609–10.  Specifically, Wanderer-Potter opined that Martinez, in an eight-hour workday, could:  walk for less than two hours; sit less than two hours; lift ten pounds occasionally and less than ten pounds frequently; reach, handle, feel, grasp, and finger over two-

---

[5] Regulations for determining whether a claimant is disabled for purposes of both DIB and SSI are identical but are nonetheless codified in two separate parts of the Code of Federal Regulations.  Part 404 of Title 20 governs DIB while Part 416 governs SSI.  For efficiency, the Court cites only the applicable regulations in Part 404, but the analogous regulations in Part 416 apply to the same effect.

thirds of the time; and bend, stoop, crouch, and squat occasionally.  *AR* at 609–10.  Most

recently, Dr. James Metcalf, M.D., evaluated Martinez's condition during reconsideration,

without examination, on October 3, 2019.  *AR* at 85–89.  Dr. Metcalf agreed with Dr. Watkins

that Martinez possessed capacities consistent with light work and found that Martinez was able

to stand or walk for even longer than Dr. Watkins believed.  *AR* at 86.  Drs. Watkins and Metcalf

thus provided support for the agency to deny Martinez benefits on initial consideration and

reconsideration.  *See AR* at 53–54 (denying benefits initially); 73–74 (denying benefits on

reconsideration).

ALJ Allen issued an unfavorable decision denying benefits on August 21, 2020.  *AR* at 7.

On October 22, 2020, Martinez died.  [Doc. 28].  His surviving children were then substituted as

Plaintiffs.  [*See* Doc. 30].  Plaintiffs sought review from the Appeals Council which was denied

on December 8, 2020.  *AR* at 1.  This made the ALJ's denial the Commissioner's final decision.[6]

Plaintiffs timely sued the Acting Commissioner in this Court on February 12, 2021.  [Doc. 1].

This Court has jurisdiction to review the Commissioner's final decision under 42 US.C. § 405(g)

and 20 C.F.R § 422.210(a).

This case was assigned to me on February 16, 2021, [Doc. 2], and the parties consented

to my presiding.  [Doc. 6].  On November 5, 2021, Plaintiffs moved to reverse the

Commissioner's decision and remand for rehearing.  [Doc. 22].  The Commissioner responded

on February 7, 2022, [Doc. 26], and Plaintiffs replied on February 21, 2022 [Doc. 27], which

completed briefing.  [*See* Doc. 29].

---

[6] Claimants who are denied benefits must obtain a "final decision" from the Administration before they may appeal the denial to a federal district court.  *See* 42 U.S.C. § 405(g).  Generally, when the Administration's Appeals Council denies review after the ALJ denies benefits, the ALJ's decision is "final" enough for a district court to review.  20 C.F.R. § 422.210(a); *see also Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) (finding that the Appeals Council's denial of review made an ALJ's decision to deny benefits "the Commissioner's final decision for purposes of review").

III.   **THE COMMISSIONER'S FINAL DECISION**

A claimant seeking disability benefits must establish that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Administration must apply a five-step analysis to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).[7]

At step one of the sequential analysis, ALJ Allen found that Martinez had not engaged in substantial gainful activity since December 1, 2016. *AR* at 12. At step two, he found that Martinez had two severe impairments: cardiomyopathy and degenerative changes of the left hip. *AR* at 12. At step three, ALJ Allen found that Martinez's impairments, individually and in combination, did not meet or medically equal any impairment listed in Appendix 1 to C.F.R. Title 20, Part 404, Subpart P. *AR* at 13.

When a claimant does not meet a listed impairment, the ALJ must determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). Residual functional capacity is a multidimensional description of the work-related abilities a claimant retains despite his impairments. 20 C.F.R. at § 404.1545(a)(1). It "does not represent the *least* an individual can do despite his or her limitations or restrictions, but the *most*." Social Security Ruling ("SSR") 96-8p at *Definition of RFC*. ALJ Allen determined that Martinez could do the following:

> perform light work, lifting/carrying 20 pounds occasionally, lifting/carrying 10 pounds frequently, standing/walking 6 hours in an 8 hour day, sitting 6 hours in an 8 hour day, occasionally climbing ramps/stairs, balancing, stopping, kneeling, crouching, and crawling, and never climbing ladders/ropes/scaffolds[.]

---

[7] These steps are summarized in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016).

*AR* at 13 (bracketed punctuation added).  ALJ Allen stated that he reached these conclusions after considering all of Martinez's symptoms and the consistency of those symptoms with all record evidence as required by 20 C.F.R. §§ 404.1520c, 404.1529, and SSR 16-3p.  *AR* at 13.

Among other evidence, he discussed Martinez's statements in his application, in his adult function reports, and at his hearing.  *AR* at 14.  ALJ Allen noted Martinez's alleged symptoms, including pain, difficulty standing and walking, fatigue, and shortness of breath.  *AR* at 14.  He also discussed, at length, objective medical evidence of Martinez's impairments including Martinez's vacillating ejection fraction[8] (ranging from 14% in January 2017 to 45–50% in August 2019), echocardiogram results, and Martinez's heart rate on examination.  *AR* at 15.  Alongside objective evidence, he considered Martinez's statements to his healthcare providers and varying compliance with medication regimens.  *AR* at 15.  Finally, ALJ Allen discussed the medical and non-medical opinions in the record, including Wanderer-Potter's opinion.  *AR* at 16.  He dismissed Wanderer-Potter's opinion because, in his view, it "appeared to be based primarily on the claimant's subjective report, and it was not supported by the benign examination findings" and  "[i]t also was not consistent with the claimant's treatment notes, which showed he walked for exercise and performed yardwork[.]"  *AR* at 16 (bracketed text added).  Wanderer-Potter's opinion was thus treated as unpersuasive.  *AR* at 16.

At step four, ALJ Allen found that Martinez could return to his past relevant work and thus was not disabled.  *AR* at 16.  He relied on the hearing testimony of Jeffrey Kiel, a vocational expert, who stated that Martinez's past relevant work fell under the job titles "salesperson-

---

[8] "Ejection fraction" measures the fraction of blood contained in a heart ventricle at the end of a diastole that is expelled during contraction, i.e., stroke volume divided by end-diastolic volume.  Stedmans Medical Dictionary, *ejection fraction*, STEDMANS 352700, Westlaw (database updated Nov. 2014).  A normal ejection fraction (by electrocardiogram) is 55% and decreases with heart failure.  *Id.*

automotive" and "antiquer/furniture finisher" in the Dictionary of Occupational Titles (DOT 273.353-010 and 763.381-010, respectively). *AR* at 16. According to Kiel, these positions, as actually and generally performed, require only light exertion and could be performed by someone with Martinez's residual functional capacity. *AR* at 16. Based on that testimony, ALJ Allen concluded that Martinez could return to that work and had not been under a disability from December 1, 2016, through the date of his decision, and thus denied benefits. *AR* at 17.

## IV.   STANDARD OF REVIEW

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). The Commissioner's findings are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance. *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A decision is not based on substantial evidence if it is overwhelmed by other record evidence. *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014).

## V.   PARTIES' ARGUMENTS

Plaintiffs attack the way in which ALJ Allen considered the evidence as well as the substantiality of evidence relied upon.[9] They also argue that ALJ Allen did not make required

---

[9] Plaintiffs' brief sometimes conflates failure to follow legal rules (legal error) and reliance on less than substantial evidence (factual error). [*See generally* Doc. 22]. This makes it unclear which ground Plaintiffs intend to argue. In fairness to the parties, the Court construes the briefs to raise both types of error.

findings at step four of the five-step sequential analysis.  The Commissioner disputes each
argument, and the Court discusses them in turn.

   a.  Martinez's Statements

Plaintiffs first argue that ALJ Allen did not properly consider Martinez's statements
about his impairments.  As discussed above, Martinez asserted that his cardiomyopathy,
degenerative changes in his left hip, and type II diabetes caused him to experience functional
limitations.  [See Doc. 22, p. 6–11].  These limitations included fatigue, shortness of breath,
swelling in his feet and legs, lightheadedness, chest pain associated with excitement and
irritation, and bloating.  [Doc. 22, p. 6–11].  As Plaintiffs tell it, these symptoms limited
Martinez to standing and walking for only ten minutes at a time [Doc. 22, p. 8]; limited his
ability to perform chores and yardwork without becoming winded or experiencing pain [Doc. 22,
p. 7–8]; limited his ability to bend [Doc. 22, p. 9]; often required Martinez to use oxygen for
several hours and sometimes while sleeping [Doc. 22, p. 9]; required Martinez to take one to two
daily naps [Doc. 22, p. 10]; and confined Martinez to sitting or laying down with his feet
elevated most of the day.  [Doc. 22, p. 9].  Plaintiffs argue that his symptoms and associated
limitations prevented him from working and that, had ALJ Allen considered his statements
properly, he would have found Martinez disabled.

The Commissioner asserts ALJ Allen considered all of Martinez's statements but
discredited most of them as inconsistent with other evidence.  [Doc. 26, p. 6–7].  First, the
Commissioner notes that ALJ Allen agreed that Martinez's impairments resulted in some
significant limitations.  [Doc. 26, p. 7].  But the Commissioner points out that objective medical
evidence suggested only mild limitations, inconsistent with the severity Martinez alleged.
[Doc. 26, p. 7].  She also notes that Martinez's consultative examination showed no deficiencies

related to walking and standing; that Martinez's daily activities were inconsistent with limitations on walking or standing; and that Martinez received treatment.  [Doc. 26, p. 7]. Finally, the Commissioner points out that ALJ Allen's decision addressed most of the impairments Plaintiffs talk about in briefing.  [Doc. 26, p. 8].  The Commissioner thus argues that the ALJ's decision shows only that ALJ Allen disbelieved some of Martinez's testimony, not that he failed to consider it.

  b.  Consultative Examiner's Opinion

Plaintiffs next argue that ALJ Allen did not properly consider consultative examiner Wanderer-Potter's opinion.  In their view, ALJ Allen rejected Wander-Potter's opinions solely based on evidence that Martinez walked for exercise and performed yardwork.  [Doc. 22, p. 10]. Plaintiffs say that this was error because ALJ Allen did not explain how evidence of Martinez's daily activities "proves that Mr. Martinez can do more than stand/walk for four hours in an eight-hour day."  [Doc. 22, p. 10].  Failing to provide that explanation, in Plaintiffs' view, violated the principles outlined in SSR 96-8p and thus requires reversal.  [Doc. 22, p. 10–11].

The Commissioner argues that ALJ Allen's reasoning for rejecting Wanderer-Potter's opinion satisfied all regulatory requirements.  According to her, ALJ Allen rejected Wanderer-Potter's opinion because it relied on Martinez's subjective complaints and was inconsistent with other medical evidence.  [Doc. 26, p. 9–10].  These were, in her view, proper reasons to reject a medical opinion.  [Doc. 26, p. 9–10].  The Commissioner further argues that Plaintiffs demand greater specificity from the ALJ's explanation than the regulations require.  [Doc. 26, p. 10].

  c.  Substantial Evidence for the Residual Functional Capacity

In addition to alleging legal errors, Plaintiffs also assert that the ALJ's residual functional capacity findings are not supported by substantial evidence.  [*See* Doc. 22, p. 5–6].  They seem to

argue that the evidence suggesting Martinez was disabled is much stronger, repeatedly citing Martinez's testimony and adult function reports in which he described his symptoms and daily routines.  [*See* Doc. 22, p. 6–11].  Lack of substantial evidence, too, would call for reversal.

The Commissioner disagrees.  She first points out that the bar for substantial evidence is low.  [Doc. 26, p. 4].  She then discusses the evidence ALJ Allen relied upon, including evidence of Martinez's daily activities, medical records with objective observations and notes, and the effectiveness of Martinez's treatment.  [Doc. 26, p. 7].  This evidence, she asserts, is substantial and requires affirmance.  [Doc. 26, p. 8].  The Commissioner also concedes that other evidence in the record could have supported a different conclusion but insists that this is not enough to require reversal and that Martinez is asking this Court to reweigh evidence.  [Doc. 26, p. 6].

> d.  <u>Delegation at Step Four</u>

Finally, Plaintiffs argue that ALJ Allen's step four analysis was insufficient.  According to them, ALJ Allen did not determine the physical and mental demands of Martinez's past relevant work at step four.  [Doc. 22, p. 11].  Rather, ALJ Allen delegated these findings to the vocational expert who then concluded Martinez could return to his past relevant work.  [Doc. 22, p. 12].  This was yet another reversible error in Plaintiffs' view.

Again, the Commissioner disagrees.  In her view, ALJ Allen "implicitly" made findings about the demands of Martinez's past relevant work.  [Doc. 26, p. 11].  She cites regulations and case law suggesting that such an implicit finding satisfies the requirements of step four and thus no error was committed.  [Doc. 26, p. 11].

## VI.   <u>ISSUES PRESENTED</u>

(a) Whether ALJ Allen properly considered Martinez's statements about his impairments?

(b) Whether ALJ Allen properly considered the medical opinion of consultative examiner
Lynn Wanderer-Potter, PA-C?

(c) Whether ALJ Allen's residual functional capacity findings are supported by
substantial evidence?

(d) Whether ALJ Allen improperly delegated his analysis at step four to a vocational
expert?

VII.   **ANALYSIS**

a.   Martinez's Statements

i.   *Relevant Law*

ALJs must consider all evidence in the record when assessing a claimant's disability
status and residual functional capacity.  *See* 20 C.F.R. §§ 404.1520(a)(3), 404.1545(a)(3).  This
includes the claimant's statements about his symptoms, which are used to determine intensity
and persistence of symptoms associated with medically determinable impairments.  *Id.* at
§ 404.1529(a); SSR 16-3p at *The two-step process*.  When evidence is inconsistent, ALJs have
discretion to weigh the conflicting evidence to determine whether the claimant has shown he is
disabled.  *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.1520b(b).  ALJs' findings are conclusive
when supported by substantial evidence.  42 U.S.C. § 405(g).

ii.   *Application*

ALJ Allen complied with the requirements in his decision.  ALJ Allen reiterated
Martinez's statements about his symptoms as they were described in Martinez's application and
hearing.  *AR* at 14.  ALJ Allen then contrasted Martinez's subjective statements with objective
medical evidence; evidence of Martinez's treatment and how consistently he complied with it;
results of Martinez's physical examination in August 2019; and opinions of physicians and a

psychologist from the state agency. *AR* at 14–16. This showed that ALJ Allen knew of and considered both Martinez's statements and other evidence which at least partly contradicted Martinez's statements. When faced with that conflicting evidence, ALJ Allen determined that Martinez experienced pain and fatigue, but that the whole of the evidence did not show those symptoms were "of such frequency, intensity, or duration as to be disabling[.]" *AR* at 14. ALJ Allen thus exercised his discretion to weigh the evidence and find that Martinez's symptoms were not as limiting as he claimed. This was no error.

Plaintiffs argue that ALJ Allen provided "phony reasons" and "boilerplate language" to reject Martinez's statements, then picked and chose evidence favoring his findings, and thus erred. [Doc. 22, p. 6]. Neither the record nor the law supports these arguments.

First, while courts have said that ALJs cannot "pick and choose" from the record, Plaintiffs misconstrue this rule. The Tenth Circuit held that ALJs cannot "pick and choose" individual findings from an uncontradicted medical opinion to support a finding of non-disability while ignoring the rest of the opinion. *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). But the prohibition on "picking and choosing" does not mean ALJs cannot make a finding of non-disability after weighing all probative evidence on either side of the issue and finding the evidence of non-disability more persuasive. Such a rule would require the Administration to make a finding of disability whenever substantial evidence existed to support such a finding. Neither SSR 16-3p nor *Hamlin* calls for this.

Second, even if ALJ Allen used some "boilerplate language" in his decision, it was not error. Plaintiffs refer to the following passage as "boilerplate language":

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the

intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

The undersigned considered the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms, treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms, any measure other than treatment the claimant uses to relieve pain or other symptoms, and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

*AR* at 14. This language can fairly be called boilerplate because it is common in the Administration's decisions denying benefits. But boilerplate language is permissible if the rest of the decision shows that the ALJ complied with requirements to consider and discuss evidence. The regulations, after all, require consideration and discussion of evidence based on various factors; they do not require ALJs to invent new ways to say they did so. As discussed above, ALJ Allen wrote at length about the conflicting evidence for and against a disability finding, showing that he complied with those regulations. While it may be error for an ALJ to summarily deny benefits based solely on boilerplate language which shows no reasoning was applied to the decision, ALJs are not required to reinvent the wheel each time they deny benefits. ALJ Allen thus did not err by using boilerplate language the way he did in his decision.

      b.  <u>Consultative Examiner's Opinion</u>

          i.  *Relevant Law*

In addition to the rules discussed above, which apply to the consideration of almost all evidence in DIB and SSI applications, ALJs must also consider several factors when weighing medical opinions. 20 C.F.R § 404.1520c(c). The most important factors are how well the opinion is supported by other medical evidence and how consistent the opinion is with that evidence. *Id.* at § 404.1520c(b)(2). When medical opinions or administrative medical findings

are equally well-supported and consistent, but not identical, the ALJ must also discuss other factors to explain how the two opinions were distinguished. *Id.* at § 1520c(b)(3). ALJs do not defer or give specific weight to any opinion based on its source; their evaluation of the factors alone determines how much weight a medical opinion receives. *Id.* at § 404.1520c(a).

       ii. *Application*

ALJ Allen complied with the above requirements in his consideration of Wanderer-Potter's opinion. ALJ Allen found that Wanderer-Potter's opinion was unsupported by her own examination findings. *AR* at 16. The Court's review of Wanderer-Potter's examination findings suggests this is a reasonable reading of her notes, which mostly show normal or slightly abnormal findings. *See AR* at 606–09. ALJ Allen also found that Wanderer-Potter's opinion was inconsistent with treatment notes "which showed [Martinez] walked for exercise and performed yardwork[.]" *AR* at 16 (bracketed text added). Plaintiffs may be right that this is not the strongest evidence, but ALJs are free to consider all evidence, including evidence of daily activities (*see* 20 C.F.R. § 404.1520(a)(3)), and it is not this Court's role to reweigh that evidence. *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). ALJ Allen also noted that, in his view, Wanderer-Potter's opinion was "based primarily on [Martinez's] subjective report" rather than objective evidence as another reason the opinion was unpersuasive. *AR* at 16. By discussing these reasons for dismissing Wanderer-Potter's opinion, ALJ Allen satisfied the regulatory requirement that he discuss the supportability and consistency of a medical opinion before setting it aside. ALJ Allen did not commit reversible error on this point.

c.  Substantial Evidence for the Residual Functional Capacity

i.  *Relevant Law*

As discussed above, an ALJ's findings are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, requiring more than a scintilla but less than a preponderance.  *Lax*, 489 F.3d at 1084.

ii.  *Application*

ALJ Allen supported his residual functional capacity findings with substantial evidence by relying on both objective medical evidence and medical opinion.  Objective medical evidence showed that, by October 2019, Martinez's heart condition improved to show an ejection fraction of 45–50%, normal rate and rhythm, and only mild impairments in other respects.  *AR* at 15. Physical examination the same year showed Martinez could "rise from the waiting room chair independently, walk on heels and toes, and tandem walk" with normal gait and no assistive device.  *AR* at 15.  Dr. Metcalf also reviewed the evidence and opined that Martinez had a residual functional capacity virtually identical to the one ALJ Allen found.  *AR* at 16, 85–89. ALJ Allen discussed and relied on each of these facts to find that, while Martinez was limited in some respects, he was still able to perform light work despite his limitations.  *AR* at 13–16.  Even if this was not all strong evidence, the totality of it is more than a scintilla of evidence that Martinez could perform light work.  Plaintiffs direct the Court to conflicting evidence to argue that ALJ Allen's findings were incorrect, but whether the Court agrees with ALJ Allen's findings is beside the point—they are conclusive and, because supported by substantial evidence, must be accepted as true.  *See* 42 U.S.C. § 405(g).  ALJ Allen's residual functional capacity findings were supported by substantial evidence thus the Court will not reverse on this point.

d.  Delegation at Step Four

i.  *Relevant Law*

To find that a claimant can return to past relevant work, ALJs must make three fact findings:  (1) the claimant's residual functional capacity; (2) the physical and mental demands of claimant's past relevant work; and (3) that the claimant's residual functional capacity would allow the claimant to return to his past relevant work.  SSR 82-62 at *The Disability Determination or Decision Where a Claimant or Beneficiary Can Meet the Physical and Mental Demands of a Past Relevant Occupation* ("*The Disability Determination*").  The Tenth Circuit calls these the "phases" of step four.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  The rationale for each finding must "follow an orderly pattern and show how specific evidence leads to a conclusion."  SSR 82-62 at *The Disability Determination*.

ALJs can use testimony from a vocational expert to help make these findings, but they cannot delegate the fact finding to vocational experts.  *Winfrey*, 92 F.3d at 1025.  Delegation at step four would situate the assessment in the expert's head, rather than on the record, leaving courts with nothing to review.  *Id.* at 1025.  ALJs may, however, "quote approvingly," and thereby adopt, the expert's testimony to support findings about the demands of a claimant's past relevant work and whether the claimant can meet those demands.  *Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003).  Even if the ALJ does not use the words "I find," context can show that the ALJ made the necessary findings on the record which the Court can review.  *See id.* at 761.  In totality, SSR 82-62, *Winfrey*, and *Doyal* thus stand for the proposition that ALJs can satisfy their obligations at step four when the record allows courts to meaningfully review whether the ALJ, distinctly from the vocational expert, made the necessary findings and applied specific evidence to conclude that the claimant was able to perform past relevant work.

ii. *Application*

ALJ Allen's phase two and three findings were not as specific as they could have been but nonetheless satisfy the regulations and case law.  During the hearing, ALJ Allen asked Martinez about his past relevant work as a caregiver, car salesman, and antique furniture seller. *AR* at 31–37.  Martinez described how he performed the work involved in each job, including the physical demands of preparing and selling secondhand antique goods.  *AR* at 32–37.  Vocational expert Jeffrey Kiel listened to the conversation, directed ALJ Allen to ask additional questions specifying how Martinez worked on furniture, and later affirmed that he reviewed the case record.  *See AR* at 28, 33–34, 37.  Later, ALJ Allen asked Kiel to identify DOT titles which corresponded to the work Martinez described and Kiel did so.  *AR* at 48.  ALJ Allen then asked whether someone with a hypothetical residual functional capacity (which would later be found to be Martinez's residual functional capacity) could perform the past relevant work as performed by Martinez and as generally performed according to the DOT.  *AR* at 49.  Kiel stated such a person could work two of the past three jobs:  automobile salesperson or "furniture finisher," the title for Martinez's past work selling secondhand goods.  *AR* at 49.  In his decision, ALJ Allen cited Kiel's opinions on these points, adopted the DOT titles as accurate descriptions of Martinez's past relevant work, and found that Martinez could return to work.  *AR* at 17–18.

The Court can, if barely, meaningfully review ALJ Allen's findings on this record.  ALJ Allen's questions developed the record of the demands of Martinez's past work and informed the vocational expert of those demands.  Kiel then had enough information about that work to give an opinion, based on his expertise, on what DOT jobs Martinez's past relevant work corresponded to and whether that work could still be performed despite specific limitations provided by ALJ Allen.  The DOT titles provided by Kiel and adopted by ALJ Allen detail how

those jobs are generally performed and many of the physical demands of the work.  This means adopting the DOT titles in the decision satisfied the requirements of phase two.  The Court can also directly compare the claimant's residual functional capacity to the demands of claimant's past relevant work and see that ALJ Allen relied on the testimony of the vocational expert to conclude that Martinez was able to return to that work.  These findings satisfy the requirements of phase three. Although ALJ Allen could have aided this Court's review by explaining why he found Kiel's opinion persuasive, there is enough information in the record for the Court to meaningfully review the Commissioner's final decision and see that the necessary findings were made.

Plaintiffs cite *Sissom v. Colvin*, 512 F. App'x 762 (10th Cir. 2013) (unpublished) for support, but newer Tenth Circuit case law is more analogous and persuasive.  In *Adcock v. Comm'r, SSA*, the Tenth Circuit held that an ALJ satisfied the requirements of step four under *Winfrey* by evaluating the claimant's residual functional capacity; identifying specific DOT titles which corresponded to the claimant's past relevant work; and citing a vocational expert's testimony in response to a hypothetical residual functional capacity to find that the claimant could return to her past relevant work.  748 F. App'x 842, 847–48 (10th Cir. 2018) (unpublished).  These facts are nearly identical to the present case.  Meanwhile, the ALJ in *Sissom* failed at phase two because he did not ask about the physical or mental demands of the claimant's past relevant work at all even though he would later find that the claimant had postural and moderate mental limitations.  *Sissom*, 512 F. App'x at 769.  By contrast, ALJ Allen asked numerous questions about the physical demands of Martinez's work selling secondhand goods, the answers to which informed the vocational expert's testimony.  *See AR* at 32–37.  The

holdings in neither case are binding, but the fact that Martinez's case mirrors *Adcock* suggests that the Court of Appeals would hold the same way were this case appealed.

The Court's holding in this case is also consistent with recent District of New Mexico case law.  The claimant in *Pass v. Kijakazi* also cited *Sissom* and *Winfrey* to argue that the ALJ did not make the findings required at step four when the ALJ cited specific DOT titles and a vocational expert's testimony to conclude that the claimant could return to her past relevant work.  1:21-cv-00248-CG, 2022 WL 2180221 at *8 (D.N.M. June 15, 2022).  This Court rejected that claimant's argument and pointed out that the ALJ in *Sissom* "did not make any factual findings comparing [the claimant's] limitations to the demands of her [past relevant work]."  *Id.* at *8 (bracketed language added) (quoting *Sissom*, 512 F. App'x at 770).  The court then held that the ALJ's use of a specific DOT title "was sufficient to describe the demands of Ms. Pass's past relevant work" and that reliance on the vocational expert's testimony was the kind of reliance blessed by *Doyal*, reaffirmed in *Adcock*, and thus embraced by this Court.  *See id.* at *9. Plaintiffs' arguments here do not show that the Court should change course now, so it will not.

## VIII.   CONCLUSION AND ORDER

Wherefore, **IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Reverse and Remand, [Doc. 22], is **DENIED** and the Commissioner's Final Decision in this case is **AFFIRMED.**

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent